Case 1:11-cv-02073-BMC   Document 14   Filed 02/27/12   Page 1 of 6 PageID #: 1132

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 24 2012 ★
C/M
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
:
L.B., on behalf of C.S.B.,                                 :
:     **MEMORANDUM**
        Plaintiff,                                         :     **DECISION AND ORDER**
:
        - against -                                        :     11 Civ. 2073 (BMC)
:
COMMISSIONER OF SOCIAL SECURITY,                           :
:
        Defendant.                                         :
:
---------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff's mother seeks review of a decision of the Commissioner of Social Security denying her application for benefits on behalf of son. After a hearing on June 29, 2009, at which time plaintiff was 10 years old, an Administrative Law Judge found that although plaintiff had a severe combination of impairments – juvenile rheumatoid arthritis (JRA), an innocent heart murmur, and mild anemia – they did not meet nor were they the functional equivalents of the "Listing of Impairments" at 20 C.F.R. §§416.924 and 416.926. He therefore found that plaintiff was not disabled. I hold that there was substantial evidence in the record to support this conclusion and therefore grant the Commissioner's motion for judgment on the pleadings.

## BACKGROUND

Although plaintiff was first diagnosed with JRA at about 2 ½ years old, the claimed onset of disability date is the date of the application, September 28, 2007. From at least shortly before that time up until the time of the hearing, plaintiff was being treated by Dr. Herbert Lazarus and other physicians at Bellevue Hospital's Pediatric Rheumatology clinic. Plaintiff was seen at the clinic every 1-2 months in the year ending April 23, 2008.

The medical and non-medical evidence concerning plaintiff's JRA basically breaks down into two groups. Plaintiff's mother describes his condition as serious enough so that a finding of disability might be warranted. In contrast, plaintiff's treating physician and plaintiff's teacher clearly do not.

Specifically, Dr. Lazarus completed a questionnaire on February 24, 2009, in which he stated, "clinically, there is minimal joint disease with mild swelling in [the] right wrist." When completing the question that asked whether plaintiff was compromised in his ability to engage in physical education, sports, and other physically related daily activities appropriate to his age, Dr. Lazarus opined: "No – if condition were to flare, perhaps he would have more significant musculoskeletal issues." This is not inconsistent with the notes of plaintiff's examinations subsequent to the onset date. Similarly, plaintiff's teacher, based on five months' experience with him, completed a questionnaire in December of 2007 that tracked each of the six "domains" (described below) that are used to determine disability; she rated him as having "no problem" in any of them except the one addressed to moving and manipulating objects. There, she noted that he had "slight problems" in moving from one place to another; demonstrating strength, coordination, and dexterity; and managing physical activities. But under that same category, she found he had "no problem" moving and manipulating things; showing a sense of the body's location and movement in space; integrating sensory input with motor output; and planning, remembering, and executing controlled motor movements. Nevertheless, she noted that plaintiff "often complains of pain in his legs. He requests to sit on a chair during instruction instead of on the rug. [Plaintiff] receives daily assistance moving throughout the building, using the elevator between floors."

Plaintiff's mother sees his impairments more severely. Her testimony at the hearing, consistent with the manner in which she completed the disability application, is that plaintiff sometimes cannot move his hands at all, and sometimes cannot be touched because he is in too much pain. She asserts that he cannot bathe himself or tie his shoes because he cannot bend down; that he cannot run, throw a ball, ride a bike, jump rope, or swim; that he cannot attend to personal hygiene or do chores around the house. Plaintiff himself testified at the hearing that while he shoots basketball free throws, he cannot run up and down the court, and his physical activities appear to be, from his testimony, very limited to non-existent.

The other conditions that the ALJ found contributed to plaintiff's "severe" combination of impairments – an innocent heart murmur and mild anemia – are documented in the record but aside from one incident in which plaintiff had trouble catching his breath, they do not appear to cause any limitations. In the same vein, plaintiff has received counseling to deal with the possible psychological effects of JRA, but his evaluations are not problematic. His academic performance and intellect has been found roughly adequate for his age and, after evaluation, he was found not to require any special education accommodations.

## DISCUSSION

Judicial review of disability benefit determinations is governed by 42 U.S.C. §§ 421(d) and 1383(c)(3) (2006), which incorporate the standards established by 42 U.S.C. § 405(g) (2006). In relevant part, § 405(g) adopts the familiar administrative law review standard of "substantial evidence," i.e., that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive [.]" Thus, if the Commissioner's decision is supported by "substantial evidence" and there are no other legal or procedural deficiencies, then his decision must be affirmed. The Supreme Court has defined "substantial

evidence" to mean "more than a mere scintilla[;][i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "In determining whether substantial evidence supports a finding of the Secretary, the court must not look at the supporting evidence in isolation, but must view it in light of the other evidence in the record that might detract from such finding, including any contradictory evidence and evidence from which conflicting inferences may be drawn." Rivera v. Sullivan, 771 F. Supp. 1339, 1351 (S.D.N.Y. 1991).

When an Administrative Law Judge finds a severe impairment, as he did here, the ALJ must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the regulatory "Listing of Impairments." 20 C.F.R. § 416.924(c)-(d); Kittles ex rel. Lawton v. Barnhart, 245 F.Supp.2d 479, 488 (E.D.N.Y. 2003). In the case of a child, if an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed impairment, and a twelve month durational requirement is satisfied, the child will be deemed disabled. 20 C.F.R. § 416.924(d) (1); see also Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004).

Analysis of functionality is performed by consideration of how a child performs in six areas, which are called "domains," described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains are: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. Id. A finding of disability is warranted if a "marked" limitation, defined as when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," 20 C.F.R. § 416.926a(e)(2)(i), is found in

4

two of the listed domains, 20 C.F.R. § 416.926a(a), or if one domain is marked by an "extreme" limitation. An "extreme limitation" means "more than marked," and consists of an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). This rating is only "give[n] to the worst limitations." Id.; see also Pollard, 377 F.3d at 190.

In the instant case, the ALJ found no impairment in five of the six domains and a "less than marked" limitation in the domain of moving and manipulating objects. There is substantial evidence to support that conclusion. It is fully consistent with the evaluation of plaintiff's teacher as well as his treating physician. The more severe evaluation by plaintiff's mother is not supported by any of the medical evidence in the record. The bottom line is that when both the plaintiff's treating physician and his teacher have made submissions that clearly do not support a finding of disability, those are difficult to overcome, and they are not overcome on this record.

Considering plaintiff's *pro se* status, I have also examined the ALJ's decision to see if it contains any procedural infirmity, such as the failure to obtain necessary records, articulate the proper standard, or explain how that standard applies to the evidence in the record. There are no such infirmities. The ALJ thoroughly set forth the standard and conscientiously applied each criterion to the evidence in concluding that plaintiff was not functionally disabled as defined in the regulations. The records are complete and indeed substantially predate the onset date claimed for disability.

I also note that in opposition to the Commissioner's motion, plaintiff has submitted two recent notes "To Whom it May Concern," one from Dr. Lazarus and one from plaintiff's psychologist, as well as a covering letter from plaintiff's mother in which she describes generally his need for benefits. I have considered whether to order a remand for the Commissioner to

consider those notes and have determined that it is not necessary as they shed no new light on plaintiff's condition. They simply note that plaintiff is being treated for the conditions that the record already indicates, and Dr. Lazarus, after describing the therapy plaintiff is currently receiving, states that "[t]his combination of interventions will hopefully keep [plaintiff's] disease under control, but the nature of juvenile arthritis is that it can flare without provocation or warning." The record does not indicate, however, that these flares are sufficiently pervasive or severe so as to overturn the ALJ's finding on the basis of lack of substantial evidence.

This is not to say that plaintiff is not sick. JRA can be an awful disease and the ALJ was quite correct in finding that plaintiff presently has a "severe" impairment. But the Social Security Act does not provide benefits for every severe illness; it allows benefits only if the condition is so severe that it meets or is the functional equivalent of the Listings. At the time of the hearing, plaintiff's condition was simply not sufficiently severe under this difficult standard. Hopefully, plaintiff will continue to improve overtime, as often happens with JRA. And if his condition unfortunately worsens, plaintiff may file a new claim for benefits. The Court would urge plaintiff's mother, if this becomes necessary, to attempt to obtain counsel in order to have the most effective presentation of her claim.

## CONCLUSION

The Commissioner's motion for judgment on the pleadings is granted, and the complaint is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

/Signed by Judge Brian M.

_____
U.S.D.J.

Dated: Brooklyn, New York
       February 24, 2012